IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD ROSE,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>TRI-STAR FORD, INC.,<br><br>　　　　　　Defendant. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Richard Rose, by and through his attorneys, Stember Cohn & Davidson-Welling, LLC, brings this Complaint against Defendant Tri-Star Ford, Inc. and alleges as follows:

### I.  INTRODUCTION

1.  In this lawsuit, Plaintiff seeks to recover unpaid wages, unpaid overtime, liquidated damages, and penalties under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and Pennsylvania law.

### II.  THE PARTIES

2.  Plaintiff Richard Rose is an adult individual who resides in Westmoreland County, Pennsylvania.

3.  Defendant Tri-Star Ford, Inc. is a Pennsylvania corporation headquartered in Indiana County, with a business address of 930 Route 22 West, Blairsville, Pennsylvania 15717.

4.  At all relevant times, Tri-Star Ford, Inc. was Plaintiff's "employer" within the meaning of the FLSA and applicable Pennsylvania laws.

5. At all relevant times, Defendant has been engaged in "commerce" as that term is defined in the FLSA. 29 U.S.C. § 203.

6. Defendant has had gross annual operating revenues in excess of $500,000.00.

7. Defendant is, and has at all relevant times been, an employer covered by the record-keeping, minimum wage, wage payment, and overtime mandates of the FLSA and the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 43 P.S. § 333 *et seq*.

### III. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over Plaintiff's FLSA claim under 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1392, as the acts that give rise to these claims occurred in this District, and Defendant employed Plaintiff in, and regularly transact business in, this District.

### IV. FACTS

10. Defendant Tri-Star Ford, Inc. ("Defendant" or "Tri-Star Ford") operates numerous automotive dealerships in the Western Pennsylvania region.

11. In addition to its automotive dealerships, Defendant also operates a Quick Lane Tire & Auto Center ("Quick Lane"), which focuses on basic automotive services tire sales, oil changes, and other basic automotive services.

12. Defendant's Quick Lane is not part of Defendant's automotive dealership, and is not engaged in the business of selling automobiles. Quick Lane is located approximately 1.5 miles away from Defendant's nearest dealership location.

13. From approximately October 3, 2016 to approximately January 19, 2017, Tri-Star Ford employed Plaintiff Rose to work as a mechanic at its Quick Lane store.

14. Throughout his employment with Tri-Star Ford, Plaintiff worked a schedule of approximately 48 hours per week.

15. At the time Plaintiff was hired, Tri-Star Ford told him he would be compensated under a "flat rate" system. Under that system, Plaintiff would hypothetically receive $14 for every hour of mechanical work "charged" or "flagged" to the customer, regardless of how much time the task took.

16. Tri-Star Ford promised to pay Plaintiff at least 30 hours of "chargeable" or "flaggable" hours for the first 90 days of his employment.

17. However, the majority of Plaintiff's work was not "chargeable" or "flaggable" to the customers. Rather, the majority of Plaintiff's work consisted of performing oil changes, tire changes, and vehicle inspections.

18. Because he was paid under a "flat rate" system, but assigned very little "chargeable" work, Plaintiff received minimal compensation.

19. In addition to such non-chargeable work, Plaintiff was tasked with retrieving parts from local automotive suppliers, using his personal vehicle to do so. Plaintiff was not compensated for such work, nor was he reimbursed for the use of his personal vehicle.

20. From October to early December 2016, Plaintiff went to his supervisors several times, explaining that he was not being permitted to charge or flag his work as Quick Land had promised, and that he was barely receiving any compensation as a result. Each time, Plaintiff was reassured that "things would pick up" and that he would receive more chargeable work soon.

21. Despite these assurances, the situation continued. From December 1 to December 15, 2016, Plaintiff worked 91.75 hours. However, he was only paid for 66 hours, because Quick Lane unilaterally determined that Plaintiff's 25.75 hours of Plaintiff's work was not "chargeable."

22. Moreover, during that same time period, Plaintiff worked at least 11.75 overtime hours (i.e., hours over 40 in a given workweek). Quick Lane did not pay Plaintiff an overtime premium, or indeed any compensation at all, for his overtime work.

23. During the next pay period (December 16 to December 31, 2016), Plaintiff worked 98.25 hours (with 9.75 overtime hours). However, Quick Lane unilaterally determined that only 34.7 of Plaintiff's hours were "chargeable," and paid Plaintiff $537.85 for his work for that period.

24. Again, Quick Lane did not pay Plaintiff an overtime premium, or any compensation at all, for his 9.75 hours of overtime.

25. When Plaintiff received his paycheck for the second half of December, he realized that he was not only being underpaid for his work, but that he was not even being paid the Pennsylvania and federal minimum of 7.25 per hour.

26. On or about January 3, 2017, while standing near his toolbox, Plaintiff spoke with his supervisor, Bill Thakrah. Plaintiff explained that his recent paychecks were inadequate, and that he was not even receiving minimum wage for his work.

27. Plaintiff asked Thakrah "what's going on with my paycheck? Why did I receive almost nothing for the second half of December." Thakrah responded by antagonizing Plaintiff, saying "well, what are you going to do? Are you going to quit?"

28. In response, Plaintiff tried to keep the conversation professional. He explained that the low wage was not what he understood he was going to receive. Plaintiff said his compensation

was not even enough to cover his basic living expenses, even though he was working well over 40 hours every week. Thakrah's only response was to tell Plaintiff there's "nothing he could do," and suggesting Plaintiff resign if he did not like his compensation.

29. On or about January 10, 2017, Plaintiff traveled to the Tri-Star Ford dealership (approximately 1.5 miles away). He met with Defendant's payroll manager, in her office, to discuss Plaintiff's concerns about his pay. Specifically, Plaintiff told the payroll manager what he already told Thakrah, namely, that he was not being paid what they owed him, and not even receiving the minimum wage for his work. Plaintiff then asked her explain what was necessary for him to receive the compensation he was promised.

30. In response, the payroll manager stood up and shouted at Plaintiff. She said his paycheck is "correct as it is," and that she "isn't going to renegotiate [his] wages." Plaintiff repeated that his pay was not even adding up to minimum wage. The payroll manager responded that if Plaintiff "has a problem with it," he can resign. Plaintiff said "I do have a problem with it, actually, because it's illegal." The payroll manager shouted at him again, throwing him out of her office and causing a scene at the dealership.

31. On or about January 11, 2017, Thakrah told Plaintiff that he had upset the payroll manager, that Plaintiff's his "attitude" was not acceptable, and that Plaintiff needed to apologize to her or risk losing his job. Thakrah also told Plaintiff he would try to get more "chargeable" work for Plaintiff.

32. Trying to save his job, Plaintiff returned to the dealership and apologized to the payroll manager for not agreeing with what she said. The payroll manager accepted, and Plaintiff returned to work.

33. On or about January 13, 2017, Plaintiff received his next paycheck. Again, Plaintiff was not compensated for his work. From January 1 to January 7, 2016, Plaintiff worked 36.5 hours. From January 8 to January 15, 2016, Plaintiff worked 44.25 hours. Yet, despite working 80.75 hours during that period, Plaintiff was only compensated for 32 hours, for a total of $496. Again, Plaintiff was being paid under the federal and state minimum wage of $7.25/hour.

34. The same day, Plaintiff approached Thakrah to discuss the ongoing problems with his paycheck. Thakrah avoided the discussion.

35. On or about January 19, 2017, Plaintiff approached the General Manager to whom Thakrah reports. Plaintiff explained that his paychecks were getting smaller and smaller, even below the minimum wage, and that Thakrah and the payroll manager refused to correct the issue. Plaintiff explained that he could not afford to keep working (more than) full-time hours for less than the minimum wage. Plaintiff then offered to continue working on a part-time basis, if he could be guaranteed at least the minimum wage for all hours worked. The General Manager said he would "have to get back to" Plaintiff.

36. The same day, Plaintiff told Thakrah that he had spoken with the General Manager. Thakrah said he was "disappointed."

37. A few hours later, Thakrah and the GM asked to meet with Plaintiff at the dealership. When Plaintiff arrived, they presented him with a resignation letter they had prepared on his behalf and asked him to sign it. They told him he needed to sign it to receive his final paycheck.

38. Plaintiff signed the resignation letter under protest. (Below his name, Plaintiff wrote "harassment / retaliation.") Plaintiff asked for a copy, but they refused to provide one.

6

39. In short, Defendant refused to pay Plaintiff a minimum wage for all hours worked, and refused to pay Plaintiff an overtime premium for hours worked over 40 in a week. When Plaintiff complained that Defendant's pay scheme was unlawful, Defendant retaliated against him, first by threatening him with termination, then by (further) reducing Plaintiff's chargeable hours, and finally by terminating his employment.

## COUNT I
### (Violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*)
### (Minimum Wage)

40. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

41. Under the FLSA, Defendant was required to pay Plaintiff no less than $7.25/hour for all hours worked.

42. At all relevant times, Plaintiff has been entitled to the rights, protections, and benefits of the FLSA, 29 U.S.C. §§ 201 *et seq.*

43. As an enterprise engaged in interstate commerce with employees engaged in commerce, Defendant is subject to the FLSA's minimum wage requirements.

44. Defendant violated the FLSA by willfully failing to pay Plaintiff the minimum wage for all hours worked.

45. Plaintiff is therefore entitled to damages equal to the difference between (i) the minimum wage for all hours worked, and (ii) the lesser amount actually paid to Plaintiff.

46. Further, Plaintiff is entitled to liquidated damages in an amount equal to the unpaid minimum wage, as described in FLSA Section 16(b), 29 U.S.C. § 216(b).

## COUNT II
### (Violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*)
### (Overtime)

47. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

48. Under the FLSA, Defendant was required to pay Plaintiff an overtime premium of "not less than one and one-half times" his regular rate of pay for all hours worked over 40 in a workweek. *See* 29 U.S.C. § 207(a)(1).

49. Throughout his employment with Defendant, Plaintiff regularly worked over 40 hours in a week.

50. Defendant violated the FLSA by willfully failing to pay Plaintiff a lawful overtime premium for all hours worked over 40 in a week.

51. Plaintiff is therefore entitled to damages equal to 1.5 times his regular rate of pay for all hours worked over 40 in a week.

52. Further, Plaintiff is entitled to liquidated damages in an amount equal to the unpaid overtime, as described in FLSA Section 16(b), 29 U.S.C. § 216(b).

## COUNT III
### (Violation of Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333 *et seq.*)
### (Minimum Wage)

53. Plaintiff incorporates all allegations in the preceding paragraphs.

54. At all relevant times, Plaintiff and the Class were entitled to the rights, protections and benefits of the PMWA, 43 P.S. § 333 *et seq*.

55. The PMWA provides that employees shall be paid no less than the federal minimum wage for all hours worked. 43 P.S. § 333.104(a.1).

56. Defendant violated the PMWA by failing to pay Plaintiff the minimum wage for all hours worked.

57. Consequently, under the PMWA, Plaintiff is entitled to damages equal to the difference between: (i) the minimum wage for all hours worked, and (ii) the lesser amount actually paid to Plaintiff.

58. Plaintiff is also entitled, under the PMWA, to recover costs, reasonable attorneys' fees, and interest. 43 P.S. § 333.113.

## COUNT IV
### (Violation of Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333 *et seq*.)
### (Overtime)

59. Plaintiff incorporates all allegations in the preceding paragraphs.

60. At all relevant times, Plaintiff was entitled to the rights, protections and benefits of the PMWA, 43 P.S. § 333 *et seq*.

61. The PMWA provides that employees "shall be paid overtime not less than one and one-half times the employe's regular rate." 43 P.S. § 333.104(c).

62. Throughout his employment with Defendant, Plaintiff regularly worked over 40 hours in a week.

63. Defendant violated the PMWA by failing to pay a lawful overtime premium to Plaintiff for hours worked in excess of 40 hours per week.

64. By failing to pay overtime to Plaintiff, Defendant is liable under the PMWA, for overtime, costs, reasonable attorneys' fees, and interest. 43 P.S. § 333.113.

## COUNT V
### (Violation of Wage Payment and Collection Act, 43 P.S. § 260.1 *et seq*.)

65. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

66. Defendant willfully failed to pay Plaintiff lawful wages and lawful overtime for more than 30 days after his regularly scheduled paydays.

9

67. As a result, Plaintiff is entitled to liquidated damages in the amount of 25% of wages and benefits due, or $500, whichever is greater, in addition to any unpaid wages and benefits. 43 P.S. § 260.10.

68. Pursuant to 43 P.S. §260.9a, Plaintiff is also entitled to costs and reasonable attorneys' fees incurred in bringing this claim.

## COUNT VI
### (Restitution based upon Unjust Enrichment)

69. Plaintiff incorporates all allegations in the preceding paragraphs.

70. Throughout his employment with Defendant, Plaintiff regularly worked hours without being paid the lawful minimum wage, and regularly worked over 40 hours in a week without being paid a lawful overtime premium.

71. In Pennsylvania, an employer's failure to pay an employee for time worked may form the basis of an unjust enrichment claim. See, e.g., Braun v. Wal-Mart Stores, Inc., 24 A.3d 875 (Pa. Super. 2011); Lugo v. Farmer's Pride, Inc., 967 A.2d 963 (Pa. Super. 2009).

72. Defendant received a direct and substantial benefit from the work performed by Plaintiff, and Defendant unjustifiably retained wages lawfully due to him for such work.

73. Allowing Defendant to retain these wages is unjust since: it is not entitled to these funds, keeping them would be a substantial windfall; the amount is more than *de minimus*; and Defendant control these funds now only because it has long withheld wages due.

74. Accordingly, Plaintiff is entitled to restitution of his wages and overtime due and owing, and to such other relief as the Court deems fair and equitable.

## COUNT VII
### (Retaliatory Discharge in Violation of Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*)

75. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

76. At all relevant times herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

77. The FLSA prohibits employers such as Defendant from retaliating against an employee for opposing practices made unlawful under the Act. 29 U.S.C. § 215(a)(3).

78. Defendant terminated Plaintiff's employment because of his complaint about Defendant's failure to pay him the lawful minimum wage.

79. In retaliating against Plaintiff for his protected complaint, Defendant willfully violated the FLSA, 29 U.S.C. § 2l5(a)(3).

80. As a result of Defendant's willful acts, Plaintiff has been deprived of wages and benefits since January 19, 2016 (the date of his termination), and suffered humiliation, embarrassment and other emotional distress.

81. Accordingly, Plaintiff is entitled to recovery of his lost wages, compensatory damages for emotional distress, liquidated damages, punitive damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment against Defendant as follows:

A. On Counts I–II (FLSA):

   (i) Declare that Defendant violated the overtime provisions of the FLSA, 29 U.S.C. § 207, as to Plaintiff; that Defendant's violations were willful; that Defendant failed to keep accurate records of time worked; that Plaintiff

                is entitled to be paid the lawful minimum wage for all hours worked; that Plaintiff is entitled to be paid a lawful overtime premium for work in excess of 40 hours per week; that the amounts of unpaid wages and unpaid overtime to which Plaintiff is entitled are to be doubled as liquidated damages and awarded to them;

       (ii)       Award Plaintiff damages in the amount of unpaid wages and unpaid overtime compensation to be proven at trial;

       (iii)      Award Plaintiff liquidated damages in an amount equal to the unpaid wages and unpaid overtime compensation;

       (iv)      Award reasonable attorneys' fees and costs;

B.       On Counts III–IV (PMWA):

       (i)       Declare that Defendant violated the PMWA;

       (ii)      Award damages to Plaintiff in the amount of unpaid wages and unpaid overtime compensation according to proof at trial;

       (ii)      Award Plaintiff pre-judgment interest at the highest rate, from and after the date of service of the initial complaint in this action, on all unpaid wages from the date such wages were earned and due;

       (iii)     Award reasonable attorneys' fees and costs;

C.       On Count V (Violation of WPCL):

       (i)       Declare that Defendant violated the WPCL by failing to pay regular wages and overtime to Plaintiff; that Defendant acted without good faith or reasonable grounds; and that Plaintiff is entitled to liquidated damages;

       (ii)      Award damages to Plaintiff in the amount of unpaid regular wages and overtime due;

       (iii)     Award liquidated damages to Plaintiff in an amount equal to 25% of unpaid regular and overtime wages, or $500, whichever is greater;

       (iv)     Award reasonable attorneys' fees and costs;

D.       Count VI (Restitution based upon Unjust Enrichment):

       (i)       Award Plaintiff restitution in the amount of his unpaid regular wages and unpaid overtime wages, including interest thereon;

E.     Count VII (Retaliatory Discharge):

    (i)     Declare that Defendant violated the anti-retaliation provisions of the FLSA, 29 U.S.C. § 215(a)(3); that Defendant's violations were willful; that Plaintiff is entitled to judgment on his retaliation claim, and to back pay, front pay, compensatory damages, punitive damages, and liquidated damages;

    (ii)    Award Plaintiff backpay, including all lost wages, benefits, bonuses, and other emoluments of employment, and front pay for a reasonable period;

    (iii)    Award Plaintiff compensatory damages for emotional distress, pain, humiliation, and embarrassment caused by Defendant's wrongful acts;

    (iv)    Award Plaintiff punitive damages;

    (iii)    Award Plaintiff liquidated damages or, if liquidated damages are not awarded, then in the alternative, prejudgment interest;

    (iv)    Award reasonable attorneys' fees and costs;

I.     Attorneys' fees and costs of the action;

J.     Pre- and post-judgment interest; and

K.     Such other relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all claims and/or issues so triable.

Respectfully submitted,

Dated: June 13, 2017

/s/Vincent J. Mersich
Vincent J. Mersich, Esquire
PA ID No. 310971
vmersich@stembercohn.com
**STEMBER COHN &**
    **DAVIDSON- WELLING, LLC**
The Hartley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA  15219
T.: (412) 338-1445
F.: (412) 338-1446